**Everett FOSTER and wife, Maudie Foster, Plaintiffs/Appellees,**

v.

**Richard BUE, Individually and d/b/a Dick Bue and Sons, and Phillip Brewer, Defendants/Appellants.**

Supreme Court of Tennessee, at Nashville.

April 25, 1988.

---

William B. Cain, Cain, Moore & Pedden, Columbia, for Bue.

Joseph F. Fowlkes, Pulaski, for Brewer.

Thomas J. Stack, Jr., Joe W. Henry, Jr., Henry, Henry & Stack, Pulaski, for plaintiffs/appellees.

## OPINION

O'BRIEN, Justice.

This action was brought by the plaintiffs to recover property damages sustained by them as the result of a fire allegedly caused by the defective construction of a flue running from a basement furnace to the chimney of a house built for them by defendants. The defendant Richard Bue is a builder who contracted with the home-owner to supervise the construction of the dwelling. Phillip Brewer is a sub-contractor who was employed by the homeowner Everett Foster to do the brick and masonry work on the structure, including the construction of the flue and the chimney.

The evidence seems clear that the plaintiffs were in the process of building a home on the outskirts of Pulaski in Giles County. They acquired a set of plans and specifica-

tions which were offered to various contractors for bids. The defendant, Bue submitted a "lock and key" bid in the sum of $83,977.97 which included a contractor's fee of ten (10%) percent of the cost of labor and materials. This bid was not accepted. An alternate proposal was made on the "labor to see after contractors (sub) and laborers, etc.," for four (4%) percent of the cost. This fee or commission totaled approximately $3,050. The latter proposal was accepted by Mr. Foster and the house was completed under the supervision of Mr. Bue. As we have noted the brick work was sub-contracted by the defendant Brewer, who was a brick mason.

Defendant Bue testified that he agreed to coordinate the work of the sub-contractors for which he received a fee of four (4%) percent of the cost of materials and labor. Mr. Foster hired and paid all of the sub-contractors although some of them were recommended to him by Mr. Bue. All of the negotiations with the sub-contractors were made by Mr. Foster. The matter of building the basement flue at an angle to avoid a smoke problem was discussed with Mr. Foster and explained by the Brewer's in detail. Foster agreed to the suggested change. Both he and Mr. Foster were aware that the re-routed flue would not have a vitreous clay liner and the decision to build it in that fashion was made entirely between the Brewers and Mr. Foster.

The plaintiff Everett Foster testified that he accepted Mr. Bue's offer of four (4%) of the cost to oversee the contractors and laborers in the construction of the dwelling. He was relying on Bue to build his home. The house was completed about the middle of July, 1981 and burned on December 22, 1981. He personally employed the Brewers to do the brick work on the dwelling. He acknowledged he was present at the house part of the time during the construction of the basement flue but denied there was any discussion of how it was to be built.

There were conflicts in the testimony of the various witnesses about where the fire burned through from the basement at the first floor level. The expert fire investigator testifying for the plaintiffs said the fire was located right around the fireplace, chimney and flue. Other witnesses testified there was a hole burned through the floor some three or four feet further out in the room, at least seven feet from the back wall. There were photographs introduced as exhibits which confirmed that testimony to some degree.

The trial court found that the plaintiff, Everett Foster, was acting as his own general contractor in the construction of the dwelling. That the function of the defendant Bue was to provide general oversight and supervision of all workmen and all construction for the purpose of coordinating the work. He was to make recommendations to Mr. Foster on the competence and ability of various sub-contractors and Mr. Foster selected the sub-contractors for each particular phase of the construction. He found that Mr. Bue communicated to Mr. Foster the proposed relocation and changes in the construction of the basement flue. Mr. Foster discussed that matter directly with Mr. Brewer and made the final decision on the construction of the flue in conjunction with the advice received from Mr. Brewer, leaving no responsibility to Mr. Bue in that regard. In reference to Brewer he found that the plaintiff had failed to prove by a preponderance of evidence that the construction method followed by Mr. Brewer was a breach of the Southern Standard Building Code, and the National Fire Code or constituted a defect that would make the house uninhabitable in violation of any common law implied warranty of habitability. He found for both of the defendants and entered judgments in their favor.

Plaintiffs appealed to the Court of Appeals. The appellee Phillip Brewer did not file a brief in that court. The Court of Appeals found that the admitted omission of the code-required vitreous clay liner in the flue from the furnace to the fireplace level was negligence per se on the part of Mr. Brewer. They found that Mr. Bue had a duty to advise Mr. Foster regarding the code requirement for a flue liner, and his failure to do so was an independent violation of his duty as a supervisor which con-

stituted negligence. They reversed the judgment of the trial court and entered judgment against both defendants in the sum of $110,000 which was the amount the trial court found the plaintiffs would be entitled to recover if the defendants were found to be liable. We conclude the Court of Appeals erred in its findings.

Only the defendant Bue has effected an appeal to this Court. Three issues are presented for review:

(1) Did the Court of Appeals misconceive the issues in the lawsuit?

(2) What was the contract between Mr. Foster and Mr. Bue?

(3) Did the Court of Appeals err in reversing the trial judge on the facts and imposing liability on Mr. Bue on the unplead and untried issue of negligent supervision?

## I.

### THE CONTRACT BETWEEN FOSTER AND BUE

The issues presented can be best resolved by first considering the relationship between Mr. Foster and Mr. Bue. There was undoubtedly a contractual relationship between them. Mr. Bue submitted a bid to Mr. Foster for the construction of his house by the terms of which he offered to construct the building on a "lock and key" basis for the sum of $83,977. This included $76,343 as the cost of labor and materials plus a ten (10%) percent override for his services as a general contractor. Mr. Foster also solicited an alternate bid for the cost of "labor to see after contractors (sub) and laborers, etc." Mr. Foster accepted that bid for services to be rendered at four (4%) percent of the cost or approximately $3,050. He testified when he hired Mr. Bue he relied on him to build his house. Mr. Bue testified that his job primarily was coordinating the work and this was understood by Mr. Foster. Mr. Foster hired all of the sub-contractors and paid them although, in some instances, Mr. Bue suggested people who were qualified in the various trades required to construct the dwelling. The record plainly shows that

Mr. Foster, in an effort to minimize the cost of constructing the residence, assumed the role as his own general contractor. He purchased all the materials and employed each of the sub-contractors to perform their particular function in the construction. He was responsible for payment to them. He was on the job site during the course of the construction to generally oversee the progress of the work. He hired the expertise of Mr. Bue as a job superintendent to coordinate the work of the various sub-contractors engaged in the construction at a considerably lesser sum than that individual would have commanded as the prime builder of the project.

## II.

### THE ACTION OF THE COURT OF APPEALS

The appellant says that the Court of Appeals misconceived the issues in the lawsuit. The complaint filed charged that defendant Bue entered into an agreement with the plaintiffs to construct the residence on their property and that he employed sub-contractors, specifically defendant Brewer to construct the chimney on the residence. The proof was to the contrary as we have noted in the discussion of the previous issue. In the course of cross-examination of the defendant Bue he was asked why he was so involved in the construction of the flue passage which was the focus of the litigation. He responded he tried to "keep up with everything on a house." The next inquiry by plaintiff's counsel was, "And you were making sure those jobs were being done and done right, or trying to. Right?" To which he responded "Trying to. I think I was going overboard. My fee was supposed to be to coordinate the work, but I knew Mr. Foster and I was trying to do more than enough." Further inquiry was made by counsel, "and see that it was done right? Didn't you say that; see that it was done right?" The witness answered "I guess so."

The Court of Appeals held:

"The last quoted statement of Mr. Bue establishes his responsibility to see that the construction was 'done right'.

Therefore, the issue should be whether Mr. Bue was negligent in carrying out that responsibility."

"Even though Mr. Foster agreed to the omission of the [flue] liner, Mr. Bue had a duty to advise Mr. Foster regarding the code requirements for a flue liner, and his failure to so advise Mr. Foster of the code was an independent violation of his duty as supervisor."

"The admitted omission of the code-required flue liner was negligence per se on the part of Mr. Brewer. The failure of Mr. Bue to properly advise Mr. Foster as to the code requirements for a flue liner before securing his agreement to the omission was a breach of his supervisory duty which constituted negligence."

The defendant Brewer is not a party to this appeal. We are concerned with any evidence of his negligence only insofar as the appeals court found against defendant Bue based on their interpretation of evidence of negligence on the part of Brewer. T.C.A. § 68–17–113 provides in pertinent part for the State Fire Marshal to develop regulations consistent with statutory provisions for safeguarding ... life and property from the hazards of fire, etc., ... including "the material, design and construction of chimneys, flues and vents in any building or structure located in this State." In accordance with the mandate of the statute the Division of Fire Prevention of the State Department of Insurance adopted in its entirety the standard 1976 building code prepared and published by the Southern Building Code Congress International, Inc., Birmingham, Alabama, and the 1976 edition (Volumes 1–16) of the National Fire Code, prepared and published by the National Fire Protection Association, Boston, Massachusetts. The expert witness for the plaintiffs testified that both the Southern and National Codes provide verbatim:

"Masonry chimneys for residential type appliances shall be lined with approved fire clayed tile flue liners not less than five-eighths (⅝) of an inch thick, *or with other approved liner of material that will resist corrosion, softening or cracking from flue gases at tempera-* *tures up to eighteen hundred (1,800) degrees F.*" (Italics supplied.)

No. 305.58(4): "Liners shall be separate from the chimney wall and the space between the liner and masonry shall not be filled; only enough mortar shall be used to make a good joint and hold the liners in position."

Section No. 305.4(f): "Masonry chimneys shall be proved tight by a smoke test after an erection and before being put into use."

The Court of Appeals found that the evidence showed without contradiction that a vitreous clay liner was omitted from the chimney in violation of the specifications and the above quoted codes. This finding is not consistent with the proof in the case.

The problem involved here arose out of a deviation from the building plans and specifications by Mr. Foster when he requested defendant Brewer to build an oval fireplace hearth extension on the first floor level of the house. This addition required the construction of a more extensive fireplace base in the basement to support the oval hearth which Mr. Brewer testified added approximately five hundred (500) bricks to the round hearth which equaled over two thousand (2,000) pounds in weight. The construction of the necessary fireplace base to support the extra weight entailed moving the wood burning furnace in the basement forward into the basement away from the back wall. The chimney to which the flue from the basement furnace and the fireplace on the first floor were connected was outside of the cement block foundation wall. The original plans called for an eight inch (8") flue which was to extend horizontally from the furnace through the fireplace base, into a vitreous clay thimble inserted into the concrete block wall then joining into a liner inside the chimney. Mr. Brewer testified that they had to bring the fireplace base out so far into the basement to support the hearth that the additional distance from the furnace to the chimney on the exterior wall of the house would create a smoke problem if the flue was installed horizontally. He testified the matter was discussed with him, his father,

Mr. Bue and Mr. Foster, who was on vacation, all present before they started work on the thimble and it was agreed to build a flue from the basement, diagonally up through the fireplace base, to the first floor with a built-in liner composed of brick and plaster which would connect with a vitreous clay liner at the level of the fireplace. Mr. Brewer testified that a two-brick outer wall surrounding an internal plastered wall was the equivalent of one brick around a vitreous liner and satisfied code requirements. At the point where the fire purportedly occurred the outer dimensions of the flue was between twelve and fourteen inches. The flue itself was constructed of three courses of bricks which were plastered with mortar on the inside. The bricks were crisscrossed so if any fumes escaped through one brick it could not get through the second course. He described the construction as similar to a triple wall pipe which served the additional purpose of keeping the flue a distance away from wood materials. The manufactured flue was constructed to a point behind the fireplace where, as soon as it was feasible, they set vitreous clay liners around the back of the fireplace which in turn connected with the clay liners in the chimney. There was no evidence to contradict the testimony that the flue was constructed to meet code requirements.

The fire investigator testified for the plaintiffs that when some of the outer bricks were removed his investigation disclosed that the brick around the flue had crumbled and the mortar was bad. The outside bricks and inner bricks were black, the mortar was not proper, and there were smoke deposits between the bricks that had come up through the mortar joints. He made no tests of the mortar used in the flue for tensile strength, heat resistance, or otherwise. He expressed the opinion that when the fire was lit in the basement heating unit hot gases escaped through the unlined flue and caused the wooden floor joists to catch fire.

The brick mason who rebuilt the flue after the fire testified that when he tore down the original construction he did not see anything wrong or unsafe with the way the flue was built. He did not see either broken brick or broken mortar. If he had constructed the flue in the first instance he would have built it in the same manner, on an angle, without a clay tile liner. This was typical construction and he had built others in the same way.

■ We concur in the trial court findings that the plaintiff failed to prove by a preponderance of the evidence that the construction method followed by Mr. Brewer was a breach of the building code or the fire code or constituted a defect that would make the house uninhabitable in violation of any common law implied warranty of habitability.

■ Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict. *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn.1984); T.R.A.P. 13(d). A plaintiff in an action based on negligence must show a duty owed by the defendant, a negligent breach of that duty, and that the injuries sustained proximately resulted from such breach of duty. *Noland v. Freeman,* 53 Tenn.App. 644, 385 S.W.2d 310 (1964). A contractor is not liable for a latent defect in materials used, not discoverable by the exercise of reasonable care and skill in inspecting them, if he uses them in constructing a building in good faith and without knowledge of the defect. See 13 Am.Jur.2d, 1964 Ed., Building and Construction Contracts, § 27, p. 29. If there was no violation of the code requirements by Mr. Brewer, or any negligence attributable to him otherwise, a fortiori there could be no breach of any duty on the part of Mr. Bue to advise Mr. Foster of a violation which did not occur.

### III.

### WAS DEFENDANT BUE LIABLE FOR NEGLIGENT SUPERVISION?

■ The Court of Appeals found that Mr. Bue was employed as a supervisor of

the various tradesmen who performed different phases of the construction. Under the evidence in the record we conclude that is too broad an analysis of Mr. Bue's status. We are of the opinion that his employment was in the nature of job superintendent to coordinate the activities of the sub-contractors, and not as a supervisor to oversee the performance of their work. We do not think his simple statement that he thought he was going overboard to make sure that things were being done right was sufficient to establish his responsibility as a general supervisor of the various sub-contractors hired by Mr. Foster in the course of the house construction.

We reverse the judgment of the Court of Appeals finding for the plaintiffs and against the defendants. The judgment of the trial court is reinstated and the cause is remanded to that court for the enforcement of its judgment. Costs of the appeal are assessed against plaintiffs.

HARBISON, C.J., and FONES, COOPER and DROWOTA, JJ., concur.