IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 6, 2001 Session

## MARY J. BAIN v. TERRANCE A. SIMPSON

**Direct Appeal from the Circuit Court for Rutherford County**
**No. 41024; The Honorable Robert E. Corlew, Judge**

---

**No. M2001-00088-COA-R3-CV - Filed March 7, 2002**

---

This appeal involves a trial court's granting of a motion for remittitur following a jury's verdict of $19,790.00 in favor of the plaintiff. The suit arose from an automobile accident caused by defendant in which plaintiff's back was injured. The evidence at trial indicated that the injury was an aggravation of a preexisting condition that caused the plaintiff additional pain and suffering for a period of approximately six months. Based on our review of the evidence, we reverse the trial court's reduction of damages and reinstate the jury's verdict.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

J. Mark Rogers, Murfreesboro, TN; Donald Capparella, Nashville, TN, for Appellant

Daniel J. Ripper, Chattanooga, TN; Michael Johnson, Nashville, TN, for Appellee

### OPINION

#### Facts and Procedural History

Mary J. Bain (Ms. Bain) sustained injuries to her back in an automobile accident on December 16, 1997 while a passenger in her mother's vehicle. On December 15, 1998, Ms. Bain filed suit against several defendants including Terrance Simpson (Mr. Simpson), the driver of the other vehicle involved in the accident. On the eve of trial, Mr. Simpson admitted fault for the accident. Following this admission, Ms. Bain offered to settle the case for $6,000.00. Her settlement offer, however, was rejected and the matter proceeded to trial.

At trial, the parties stipulated to Mr. Simpson's fault. Accordingly, the empaneled jury was asked to decide only the amount of damages suffered by Ms. Bain. Evidence offered to the jury

regarding damages reflected both a previous back injury suffered by Ms. Bain as well as damage to her back from the automobile accident.

To support her claim, Ms. Bain offered the testimony of Dr. William Louis Bacon ("Dr. Bacon"). Dr. Bacon testified that Ms. Bain first injured her back on December 31, 1996 in a fall on a set of steps. As a result of her fall, Ms. Bain suffered from a lateral disc herniation that required surgery to repair. Back surgery was performed on Ms. Bain to repair the herniated disc on November 4, 1997. Dr. Bacon testified that during subsequent post-operative visits to his office prior to the auto accident, Ms. Bain indicated that the pain in her back and legs had subsided. Based on these subsequent visits, Dr. Bacon considered the surgery a success.

Following the accident, on December 18,1997, Ms. Bain again visited Dr. Bacon. Dr. Bacon testified that during this visit, Ms. Bain was experiencing increased pain in her back and left hip, paresthesias in her left leg, and muscle spasms because of the accident. Dr. Bacon further indicated that Ms. Bain's increased pain continued for several months after her initial visit. Eventually, on March 13, 1998, Ms. Bain reluctantly underwent an epidural steroid injection in her lower back to help ease the pain and swelling.

On June 12, 1998, almost six months after the automobile accident, Ms. Bain concluded her treatments with Dr. Bacon. Dr. Bacon indicated at the final visit that Ms. Bain's condition had finally improved to the point it was prior to the automobile accident. Dr. Bacon's conclusion was that Ms. Bain's preexisting condition had been aggravated by the accident, but that no permanent injury had resulted. Ms. Bain offered proof that the medical expenses related to the accident totaled $3,044.19.

Mr. Simpson offered evidence to the jury that Ms. Bain took only one day off of work because of the accident. Further, Ms. Bain was able to continue to work overtime during the Christmas travel season as an employee of Republic Parking at the Nashville airport. Evidence was also offered showing that the restrictions Dr. Bacon had placed on Ms. Bain's activities were not increased as a result of the accident.

The jury returned a verdict in favor of Ms. Bain in the amount of $19,790.00. Following the verdict, Mr. Simpson filed a motion with the court for a new trial or remittitur alleging that the evidence failed to support the determination of damages by the jury. In the motion, Mr. Simpson's attorney disclosed to the trial judge that Ms. Bain had offered to settle the case for $6,000.00 prior to trial.

Acknowledging the impropriety of the settlement disclosure, the court nevertheless granted Mr. Simpson's request for a remittitur and reduced the judgment by $6,500.00 to $13,290.00. In its order, the court suggested that the jury verdict was sufficiently high to be outside the jury verdict range. Further, the court indicated that the new verdict consisted of $3,044.19 for medical bills, $246.00 for loss of earning capacity, and an additional $10,000.00. Ms. Bain accepted the remittitur under protest and filed this appeal.

## Issues

Ms. Bain raises two issues for our review: 1) whether the trial court erred in suggesting a remittitur based on its finding that the jury's verdict was outside the range of reasonableness; and 2) whether the disclosure made by Mr. Simpson's attorney concerning the settlement offer tainted the trial judge's decision to reduce the jury verdict. In addition, Mr. Simpson insists that the trial court erred in failing to sufficiently reduce the jury verdict and has urged us to do so.

## Standard of Review

Our review of a trial court's suggestion of a remittitur is governed by section 20-10-102(b) of the Tennessee Code, which requires this Court to apply the standard of review provided in Rule 13(d) of the Tennessee Rules of Appellate Procedure. Under Rule 13(d), our review is *de novo* on the record, with no presumption of correctness as to the trial court's conclusions of law. Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988). With regard to factual issues, however, we attach a presumption of correctness to the findings below. Accordingly, we may not reverse a trial court's findings of fact unless they are contrary to the preponderance of the evidence. Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. of App. 1996). Here, because remittitur is based on factual determinations, we must determine whether the court's decision to lower the jury's verdict awarded to Ms. Bain stands in contradiction to the preponderance of the evidence.

## Law and Analysis

The Tennessee Supreme Court has long held that the determination of damages for personal injury is primarily the job of a jury. Bates v. Jackson, 639 S.W.2d 925, 927 (Tenn. 1982) (quoting Foster v. Amcon Intern., Inc., 621 S.W.2d 142, 147 (Tenn. 1981)). Section 20-10-102(a) of the Tennessee Code, however, authorizes a judge to grant a party's request for a remittitur "when the trial judge is of the opinion that the verdict in favor of a party should be reduced." A trial judge acts as thirteenth juror when making this determination. Bates, 639 S.W.2d at 927.

Previously, when a judge acted as the thirteenth juror and granted a remittitur, our first task on appeal was to determine a reasonable range of damages based on the proof provided at trial. Next, we had to decide whether the jury verdict and the court's remitted verdict fell within that range. Once determined, our role on appeal when the jury verdict and trial court's remitted verdict were within the range of reasonableness was to simply reinstate the jury's verdict. Smith v. Shelton, 569 S.W.2d 421, 427 (Tenn. 1978).

Since Smith, however, our role has been somewhat redefined. We now follow the supreme court's instructions given in Foster and Bates. These cases instruct us that section 20-10-102 empowers trial courts to suggest a remittitur even when the jury verdict is within the range of reasonableness. Bates, 639 S.W.2d at 927; Foster, 621 S.W.2d at 147. Further, as this Court stated in Long v. Mattingly, 797 S.W.2d 889 (Tenn. App. 1990):

The role of the appellate courts is to determine whether the trial court's adjustments were justified, giving due credit to the jury's decision regarding the credibility of the witnesses and due deference to the trial court's prerogatives as thirteenth juror. Burlison v. Rose, 701 S.W.2d at 611; Bates v. Jackson, 639 S.W.2d at 926-27; Foster v. Amcon Int'l, Inc., 621 S.W.2d at 145.

The contours of the scope of appellate review have changed over the years. Now, the appellate courts customarily conduct a three-step review of a trial court's adjustment of a jury's damage award. First, we examine the reasons for the trial court's action since adjustments are proper only when the court disagrees with the amount of the verdict. Burlison v. Rose, 701 S.W.2d at 611. Second, we examine the amount of the suggested adjustment since adjustments that "totally destroy" the jury's verdict are impermissible. Foster v. Amcon Int'l, Inc., 621 S.W.2d at 148; Guess v. Maury, 726 S.W.2d 906, 913 (Tenn. Ct. App. 1986). Third, we review the proof of damages to determine whether the evidence preponderates against the trial court's adjustment. See Tenn. Code Ann. 20-10-102(b).

Id. at 896.

In the case *sub judice*, finding that both the jury's verdict as well as the trial court's remitted verdict fall within the applicable range of reasonableness, we turn to the first step of our analysis which requires us to examine the reasons for the court's actions. Unfortunately, the trial court offered little reasoning behind its decision to grant the remittitur. The trial court's order merely indicates that the issues before the court included a determination of whether the jury's verdict was "sufficiently high to be outside the jury verdict range." Given its decision, we are left to assume that the court in fact found the verdict to be outside the appropriate range. No other insight into the court's reasoning, however, is given. As such, this step fails to provide help in our review.

Next, we must determine whether the trial court's decision to reduce the jury's verdict by $6,500.00 "totally destroyed" it. By our calculations, the action of the trial court reduced the jury's verdict by approximately one-third. This reduction fails to rise to the level of leaving the jury's verdict "totally destroyed." Accordingly, the court did not err in this respect.

The final step of our analysis, as stated above, requires us to determine whether the court's decision to reduce the jury's verdict is contrary to the preponderance of the evidence. In this respect, we fail to agree with the trial court's determinations. The uncontradicted expert testimony of Dr. Bacon indicated that Ms. Bain suffered pain and discomfort due to Mr. Simpson's negligence for approximately six months. We realize that Ms. Bain had previously suffered a separate injury and was forced to undergo surgery as a result. Dr. Bacon, however, testified that the pain associated with the surgery and previous injury had subsided. Further, following the accident, in addition to her extended pain and discomfort, Ms. Bain suffered certain ailments, which did not arise until after the accident such as muscle spasms and paresthesias in her left leg. Giving due credit to the jury's decision regarding the credibility of the witnesses and due deference to the trial court's prerogatives as thirteenth juror, our review of the evidence reveals that the trial court acted contrary to the preponderance of the evidence.

Mr. Simpson argues that because Ms. Bain's injuries were merely an aggravation of a preexisting condition and were not permanent, the evidence supports the reduction of the jury's verdict. We disagree with Mr. Simpson's conclusions. As stated above, Ms. Bain sustained additional pain and suffering for approximately six months due to the automobile accident. Further, proof of a permanent injury is unnecessary for our conclusion that the jury awarded damages in accordance with the preponderance of the evidence. Because we hold that the proper damages in this case were reflected in the jury's verdict based on the preponderance of the evidence, we fail to reach Ms. Bain's second issue.

**Conclusion**

For the aforementioned reasons, we reverse the judgment of the trial court and reinstate the jury's verdict of $19,790.00. Costs on appeal are taxed to the Appellee, Terrance Simpson, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE