IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SUBMITTED ON BRIEF APRIL 20, 2001

## PYRAMID COMPUTERS, INC. v. BEN GASPARRO, d/b/a PROFESSIONAL TAX AND BOOKEEPING

**Direct Appeal from the Circuit Court for Henderson County**
**No. 97-110; The Honorable Roger A. Page, Judge**

-----

**No. W1999-01784-COA-R3-CV - Filed July 26, 2001**

-----

This case involves a business relationship between Pyramid Computers, Inc., and Ben Gasparro. Mr. Gasparro purchased computer equipment and related services from Pyramid for use in his businesses. Mr. Gasparro also sold Pyramid computers to his clients. Pyramid sued and alleged that Mr. Gasparro owed it $14,446.32. The trial court entered judgment for Pyramid in the amount of $11,989.32. Pyramid appeals, alleging that the trial court erred in reducing the amount it sought and that the trial court erred in denying prejudgment interest

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Danny P. Dyer, Knoxville, TN, for Appellant

No Brief filed for Appellee

### OPINION

### Facts and Procedural History

Plaintiff Pyramid Computers, Inc. (Pyramid), is a Tennessee Corporation with its principal place of business in Lexington, Tennessee. The president of Pyramid is Jeffrey Dyer (Mr. Dyer). At all times relevant to this appeal, Defendant Ben Gasparro[1] (Mr. Gasparro) owned and operated Professional Tax and Bookkeeping in Linden, Tennessee. At certain times relevant to this appeal, Mr. Gasparro was also a partner with Janet Marshall in Marshall Insurance. Additionally, at the time of trial, Mr. Gasparro owned a business named Two Rivers Realty.

-----

[1] Mr. Gasparro did not file a brief in this action.

Mr. Gasparro met with Mr. Dyer late in 1993 to discuss the potential purchase of computer equipment. Not only did Mr. Gasparro need computer equipment for his own businesses, but he also told Mr. Dyer that he had customers who needed computers and he inquired into an arrangement whereby he could sell his clients computers obtained from Pyramid. As a result, the parties agreed that Mr. Gasparro could sell Pyramid computers to his third-party clients.

In late 1993, Mr. Gasparro began purchasing computer equipment and related services from Pyramid. Throughout the course of the parties' business relationship, Mr. Gasparro purchased fourteen computer systems from Pyramid: seven for use in his businesses and seven that he resold to his clients. Numerous upgrades and other computer related services were performed by Pyramid after the computers were purchased. The total amount billed to Mr. Gasparro for the fourteen computers and related services was $30,730.52. Mr. Gasparro made payments to Pyramid totaling $16,284.20, leaving an unpaid balance, according to Pyramid, of $14,446.32.

At trial, there was a dispute regarding the structure of the parties' business relationship. Mr. Gasparro claimed that he was supposed to have received a twenty percent commission on sales to third parties and that purchases by third parties should not have been billed to his account. Moreover, Mr. Gasparro argued that he should have received a twenty percent discount on computers purchased for personal use. In contrast, Mr. Dyer testified that the parties' agreement was that Mr. Gasparro would pay twenty percent above Pyramid's cost, regardless of whether he was purchasing the computer for his own use or for resale to third parties. The trial court found the testimony of Mr. Dyer more credible, and found that the parties' agreement was that Mr. Gasparro was to receive computer equipment at twenty percent over Pyramid's cost rather that a commission of twenty percent.

Mr. Gasparro also claimed that there were numerous discrepancies in the bills he received from Pyramid. Furthermore, Mr. Gasparro argued that Pyramid wrongfully billed him $1,185.00 for a laser printer delivered to Marshall Insurance.

Trial in this matter was held on August 17, 1999. The trial court found discrepancies in the billing in favor of Mr. Gasparro in the amount of $1,272.00. In addition, the court found that Mr. Gasparro should not have been billed for the printer that Pyramid delivered to Marshall Insurance. Therefore, the court found in favor of Pyramid and against Mr. Gasparro in the amount of $11,989.32. The court refused to award Pyramid prejudgment interest because "the amount owed by Defendant was reasonably disputed because of the confusing invoices sent to Defendant." Pyramid appeals, and raises the following issues, as we perceive them, for our review:

I.      Whether there should have been any reduction of the amount sought by the Plaintiff.
II.     Whether the Plaintiff should have been awarded prejudgment interest.

We will address each issue in turn.

**Standard of Review**

When a civil action is heard by a trial judge sitting without a jury, our review of the matter is *de novo* on the record, accompanied by a presumption of correctness of the findings below. See Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988); TENN. R. APP. P. 13(d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. See Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's conclusions that are based on undisputed facts. See NCNB Nat'l Bank v. Thrailkill, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

**Law and Analysis**

First, Pyramid argues that there should not have been any reduction in the $14,446.32 that it sought. Specifically, Pyramid takes issue with the $1,272.00 reduction the court made for "discrepancies in the billing." Pyramid argues that, under the law of Sales, Mr. Gasparro accepted the goods for purposes of the Uniform Commercial Code. Therefore, Pyramid claims, Mr. Gasparro was required by law to pay for the goods at the contract rate. See TENN. CODE ANN. § 47-2-607 (1996). Section 47-2-606 of the Tennessee Code states the following, in pertinent part:

(1) Acceptance of goods occurs when the buyer:

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or
(b) fails to make an effective rejection (§ 47-2-602(1)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

TENN. CODE ANN. § 47-2-606 (1996).
We find that Pyramid's reliance on section 47-2-606 of the Tennessee Code is misplaced. In this case, Mr. Gasparro's "discrepancies" include receiving bills for equipment that he allegedly never received and overbilling by Pyramid. Mr. Gasparro's discrepancies do not squarely fit within the aforementioned code section, as he is not solely claiming that he received goods which later turned out to be nonconforming. Mr. Gasparro's "discrepancies" mainly concern billing and accounting issues. After a thorough review of the record, we find that, under the unique circumstances of this case, the trial court's reductions for discrepancies in billing do not preponderate against the evidence. Therefore, we find that this issue is without merit.

Next, Pyramid argues that the trial court's reduction of $1,185.00 for the printer delivered to Marshall Insurance was contrary to the law of partnerships and contrary to the weight of the

evidence. Pyramid asserts that the trial court mistakenly focused on whether or not Mr. Gasparro authorized or knew of the printer that was delivered to Janet Marshall at Marshall Insurance.

We note that Janet Marshall and Mr. Gasparro were partners in Marshall Insurance for at least some period of time. Section 61-1-108(a) of the Tennessee Code states the following, in relevant part:

> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member, binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

TENN. CODE ANN. § 61-1-108(a) (1989).

We also note that "[a]ll partners are liable, jointly and severally for everything chargeable to the partnership." TENN. CODE ANN. § 61-1-114 (Supp. 2000). Mr. Gasparro admitted at trial that the seven computer systems used by his businesses included the ones installed at Marshall Insurance and that he was responsible for paying for that equipment. Additionally, we note that Mr. Dyer repeatedly testified at trial that he was not notified of the termination of the partnership between Mr. Gasparro and Ms. Marshall until after the printer was delivered to Marshall Insurance. Moreover, it is evident that the disputed printer was on the invoices reviewed by Mr. Gasparro and Mr. Dyer, and Mr. Gasparro made no objection to the printer delivered to Marshall Insurance at this meeting. Furthermore, while the record is replete with correspondence from Mr. Gasparro to Mr. Dyer, we fail to find one document containing any reference to the disputed printer being wrongfully billed to Mr. Gasparro's account or any document communicating that the partnership had been terminated. After a thorough review of the record, we find that the termination of the partnership between Mr. Gasparro and Mrs. Marshall had not been communicated to Pyramid when the printer was delivered to Marshall Insurance. Since we also find that the purchase of the printer by Mrs. Marshall was "carrying on in the usual way the business of the partnership," we find that Mr. Gasparro is jointly and severally liable with Mrs. Marshall for the cost of the printer. TENN. CODE ANN. § 61-1-108(a) (1989); see also TENN. CODE ANN. § 61-1-114 (Supp. 2000). Therefore, we reverse the trial court on this issue.

Finally, Pyramid argues that the trial court erred in its denial of prejudgment interest. Section 47-14-123 of the Tennessee Code provides that prejudgment interest "may be awarded by courts or juries in accordance with the principles of equity. . . ." TENN. CODE ANN. § 47-14-123 (1995). "The award of pre-judgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion." Spencer v. A-1 Crane Serv., Inc., 880 S.W.2d 938, 944 (Tenn. 1994) (citations omitted). This standard of review does not authorize an appellate court to merely substitute its judgment for

that of the trial court.  See Myint v. Allstate Ins. Co., 970 S.W.2d 920, 926 (Tenn. 1998).  After examination of the record, we find that the trial court did not abuse its discretion in declining to award Pyramid prejudgment interest.  Therefore, this issue is without merit.

### Conclusion

For the aforementioned reasons, we affirm in part, reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion.  Costs on appeal are taxed one half to Pyramid and one half to Mr. Gasparro, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE