IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 19, 2001 Session

## TERRI JUAN (BARRON) JACKSON v. DANNY L. JACKSON

**Direct Appeal from the Chancery Court for Hardin County**
**No. 4964; The Honorable C. Creed McGinley, Substitute Chancellor**

---

**No. W2001-00302-COA-R3-CV - Filed January 7, 2002**

---

This appeal involves the calculation of an obligor parent's net income for purposes of determining whether a decrease in child support obligations is warranted. Appellant's motion to decrease child support obligations was overruled by the lower court based on a finding that no significant variance existed between the guidelines and the amount of support currently ordered. In calculating the guidelines amount, the court refused to decrease Appellant's gross income by temporary living expenses he accrued because of his job assignment. Appellant appealed alleging that the deduction in his gross income should be allowed. For the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

Lloyd R. Tatum, Henderson, TN, for Appellant

Dennis W. Plunk, Savannah, TN, for Appellee

### OPINION

### Facts and Procedural History

Danny Jackson (Appellant) and Terri Durham (Appellee) were granted a divorce on September 13, 1988 on grounds of irreconcilable differences. Primary custody of parties' two minor children was granted to Appellee. Further, pursuant to a marital dissolution agreement, Appellant was ordered to pay child support in the amount of $300.00 per month until he moved from the marital home. Upon moving from the marital home, the child support payments would increase to $450.00.

In 1993, Appellee petitioned the court for an increase in the amount of child support to be paid by Appellant. Finding that Appellant's income had sufficiently risen, the court awarded an

increase in Appellant's monthly payments. The court ordered the new payment amount to be $610.00 per month. The increase reflected Appellant's income of approximately $40,000.00 per year as well as the fact that both children, at the time, were still minors.

Appellee petitioned the court a second time on August 13, 1999. In her second petition, Appellee sought enforcement of the court's previous order and an additional increase in the monthly child support payments. Although one of the parties' children had reached the age of majority, Appellee alleged that Appellant's increase in income demanded an overall increase in payments for the remaining minor child.

On March 7, 2000, the court issued an order requiring Appellant to make a lump sum payment in the amount of $25,000.00 to Appellee for arrearage in previous support payments. In addition, the court found that Appellant's annual income had increased to $121,732.00, or $10,144.33 per month. Based on Appellant's significant change in income, child support payments were increased to $1,475.00 per month.

Approximately four months later, on July 11, 2000, Appellant filed a motion with the court seeking a decrease in the child support payments. In support of his motion, Appellant alleged that through no fault of his own, his employer had materially and substantially reduced his monthly income. A hearing was held on January 16, 2001.

At the hearing, evidence was presented regarding Appellant's earnings. The proof showed that at all times relevant to this appeal, Appellant worked in the construction industry. At the time of trial, Appellant worked for Eichleay Company (Eichleay) as a construction manager. Appellant argued that his employer had significantly reduced his base pay and transferred him to Birmingham, Alabama since the previous order of the court. Due to his relocation, Appellant argued that his base pay had been reduced to $87,000 annually and that he was forced to maintain a second residence in Birmingham and pay Alabama state income taxes. Appellant alleged that the additional expenses associated with his job totaled approximately $1,100.00 per month. Because of the new circumstances, Appellant argued that he was entitled to a decrease in his child support payments.

Appellee offered proof, however, that at the time of trial, Appellant also received $2,500.00 per month in allowances from Eichleay for living expenses. Additionally, the evidence showed that Appellant received a $10,000.00 yearly payment from J & J Tractor Sales, Inc. for either his stock ownership or participation in the business. Further, contradicting his allegations, Appellant testified in court that his income had not decreased since his last appearance in court when the previous child support payments were set.

Upon hearing all proof presented by the parties and finding no material or substantial change in circumstances, the court overruled Appellant's motion to reduce the child support obligations. On January 24, 2001, the court entered an order stating the ruling and awarding Appellee attorney's fees accrued in defense of Appellant's motion. Appellant now appeals the court's decision regarding the child support obligations.

**Issue**

Whether the trial court erred in denying Appellant's motion to decrease child support.

**Standard of Review**

When a civil action is heard by a trial judge sitting without a jury, our review of the matter is *de novo* on the record, accompanied by a presumption of correctness of the findings of fact below. Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988); T.R.A.P. 13(d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's conclusions that are based on undisputed facts. NCNB Nat'l Bank v. Thrailkill, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

**Law and Analysis**

Pursuant to section 35-5-101(a)(1) of the Tennessee Code, "[i]n cases involving child support, upon application of either party, the court shall decree an increase or decrease in such allowance when there is found to be a *significant variance*, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered . . . ." Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1999) (emphasis added). The child support guidelines define a "significant variance" as being "at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (1997). The amount established for child support under the guidelines is based on flat percentages of the obligor parent's net income. For one child, the amount of child support is determined by calculating twenty-one percent of the obligor parent's net income. Id. at 12-2-4-.03(5).

To calculate net income, gross income must first be determined. The definition of gross income is given significant coverage in the guidelines. The guidelines define gross income in part as the following:

>  (3) Gross income.
>
>  (a) Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefit received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment. Income from self-employment includes

income from business operations and rental property, etc., less reasonable expenses necessary to produce such income. Depreciation, home offices, excessive promotional, excessive travel, excessive car expenses, or excessive personal expenses, etc., should not be considered reasonable expenses. "In kind" remuneration must also be imputed as income, i.e., fringe benefits such as a company car, the value of on-base lodging and meals in lieu of BAQ and BAS for a military member, etc.

(b) Variable income such as commissions, bonuses, overtime pay, dividends, etc., should be averaged and added to the obligor's fixed salary.

Id. at 1240-2-4-.03(3)(a) - (b).

Once an obligor parent's gross income has been established, the guidelines provide the following guidance on determining net income:

(4) Net income is calculated by subtracting from gross income of the obligor FICA (6.2% Social Security + 1.45% Medicare for regular wage earners and 12.4% Social Security + 2.9% Medicare for self-employed, as of 1991, or any amount subsequently set by federal law as FICA tax), the amount of withholding tax deducted for a single wage earner claiming one withholding allowance . . ., and the amount of child support ordered pursuant to a previous order of child support for other children.

Id. at 1240-2-4-.03(4).

Appellant alleges that the lower court erred in calculating his net income and, accordingly, the amount of child support that should now be due. To arrive at net income, Appellant argues that his gross income should be reduced by temporary living expenses incurred because of his job assignment in Birmingham, Alabama. Appellant alleges that his current job assignment requires him to maintain two residences: his primary residence in Tennessee and a secondary residence in Birmingham. Appellant states these temporary living expenses "easily total $1,100.00 per month." Appellant's entire argument that a significant variance exists rests on the determination of whether or not the temporary living expenses can be deducted from his gross income.

In support of his contention that the expenses should be deducted, Appellant quotes a portion of Chapter 1240-2-4-.03(3)(a) of the guidelines, which states that "reasonable expenses necessary to produce such income" are not included in gross income. Appellant, however, fails to quote the entire provision from which the phrase was taken. The entire sentence states, "Income *from self-employment* includes income from business operations and rental property, etc., less reasonable expenses necessary to produce such income." Id. (emphasis added) Obviously, the phrase contemplates deducting such amounts only from income associated with self-employment ventures.

Appellant, however, admits to being an employee of Eichleay. Further, the income Appellant seeks to reduce by his expenditures in Birmingham comes from Eichleay. Accordingly, Appellant's argument is without merit with regard to excluding such expenditures from his gross income. The lower court did not err by refusing to deduct these expenditures.

Appellant further alleges that the lower court erred by refusing to deduct the income taxes paid to the state of Alabama from his gross income. We fail to reach this issue, however, given that the temporary living expenses incurred by Appellant cannot be deducted from his gross income. Even if the Alabama income taxes can be used to reduce Appellant's gross income, without a deduction for the living expenses, Appellant fails to show a significant variance between the guidelines and the amount of support currently ordered.

**Conclusion**

For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are taxed against Appellant, Danny L. Jackson, and his surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE