IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 20, 2002 Session

## JOYCE MARIE HOWELL v. PHILLIP DAVID HOWELL

**Direct Appeal from the Chancery Court for Madison County**
**No. 51574; The Honorable Joe C. Morris, Chancellor**

---

### No. W2001-01167-COA-R3-CV

---

This appeal arises from a action for divorce. Following lengthy litigation, the trial court valued and divided the parties' marital property, refused to grant the wife alimony in futuro, forgave an arrearage in alimony pendente lite owed by the husband, and ordered each party to pay their own attorney's fees. Wife filed this appeal and now argues that the court erred in its valuation and distribution of marital assets, refusal to grant her alimony, refusal to award attorney's fees, and forgiveness of the husband's arrearage. For the following reasons, we affirm the decision of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and WILLIAM B. ACREE, JR., SP. J., joined.

Don G. Owens, III, Memphis, TN, for Appellant

James F. Butler, Jackson, TN, for Appellee

### OPINION

#### I. Facts and Procedural History.

This litigation began on March 1, 1996 with Joyce Marie Howell (Wife) petitioning the Chancery Court of Madison County, Tennessee for an order of protection from her husband of almost twenty-six years, Phillip David Howell (Husband). The same day, an *ex parte* order of protection was issued. The order prohibited Husband from "abusing, threatening to abuse, or committing acts of violence upon [Wife]."

Several days later, on March 5, 1996, Wife filed a complaint requesting an absolute divorce from Husband. As grounds for the divorce, Wife's complaint alleged inappropriate marital conduct, adultery, and the existence of irreconcilable differences. Wife's complaint also sought to temporarily

enjoin Husband from, among other things, dissipating marital assets. The court issued a temporary injunction consistent with Wife's request. Approximately one month later, another restraining order was placed on Husband and an order of protection was granted to Wife. Finally, on October 8, 1996, the court entered an order *nunc pro tunc* requiring Husband to pay $1000.00 per month to Wife for alimony pendente lite.

The court's many orders did little to quell the bitterness and bickering between the parties. On October 15, 1996, the court held both parties in contempt for withholding certain marital property. More petitions for contempt, however, would soon arise. Indeed, the record in this case is littered with motion upon motion for contempt, specific relief, and for restraining orders.

During the lengthy litigation, Husband filed for and was granted a bankruptcy under Chapter 11 of the U.S. Code. Apparently, the bankruptcy was no surprise. The trial court noted in its findings of fact that "it was fairly obvious from the beginning due to lack of communication and cooperation between the parties that a bankruptcy was inevitable and any equity that had been accumulated would probably be lost."

The court's final decree was issued on April 23, 2001. This decree outlined the division of marital property, forgave an arrearage by Husband in alimony pendente lite payments, and ordered each party to pay their own attorney's fees. The decree also stated that although Wife was disabled, she was not entitled to alimony in futuro. The court reasoned that no alimony in futuro was needed because Wife was drawing disability, was not having to repay any marital debts, and Husband's income was approximately the same as Wife's. Wife filed a notice of appeal and this matter is now before this Court.

## II. Law and Analysis.

Wife has raised several issues for our review. Wife's issues concern the court's division of marital property, failure to award alimony in futuro, forgiveness of Husband's arrearage of alimony pendente lite, and failure to award attorney's fees. We will discuss each of these issues in turn.

Because this matter was heard by a trial judge sitting without a jury, our review is *de novo* on the record, accompanied by a presumption of correctness of the factual findings below. Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988); TENN. R. APP. P. 13(d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's conclusions that are based on undisputed facts. NCNB Nat'l Bank v. Thrailkill, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

### A. Division of Marital Property.

Wife's first issue raised for our review concerns the manner in which the trial court chose to value and divide the parties' marital property and debt. First, Wife argues that the trial court undervalued the farm and home owned by the parties and improperly distributed it to Husband.

Next, Wife contends that the trial court erred by not requiring Husband to assume certain debt associated with his business and hold her harmless thereon.

This Court has repeatedly held that an equitable division of property does not necessarily mean an equal division. See Bookout v. Bookout, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997); Batson v. Batson, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). "The division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of marital property." King v. King, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (citing Cohen v. Cohen, 937 S.W.2d 823, 832 (Tenn. 1996); Ellis v. Ellis, 748 S.W.2d 424, 427 (Tenn. 1988); Brown v. Brown, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994)).

In determining what constitutes an equitable division of marital assets, the court will consider the factors listed in section 36-4-121(c) of the Tennessee Code. Section 36-4-121(c) provides:

> In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>
> (6) The value of the separate property of each party;
>
> (7) The estate of each party at the time of the marriage;
>
> (8) The economic circumstances of each party at the time the division of property is to become effective;
>
> (9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

TENN. CODE ANN. § 36-4-121(c) (2001). Further, the court must make the division of marital property without regard to marital fault. TENN. CODE ANN. § 36-4-121(a)(1) (2001).

The trial court's classification and division of marital property enjoys a presumption of correctness on appeal and will be reversed or modified only if the evidence preponderates against the trial court's decision. See Lancaster v. Lancaster, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); Hardin v. Hardin, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983). "The trial court is granted broad discretion in adjusting and adjudicating the parties' interest in all jointly owned property. Its decision regarding division of the marital property is entitled to great weight on appeal." Watters v. Watters, 959 S.W.2d 585, 590 (Tenn. Ct. App. 1997) (citing Batson, 769 S.W.2d at 859). The fairness of the property division is judged upon its final results. See Wade v. Wade, 897 S.W.2d 702, 717 (Tenn. Ct. App. 1994) (citing Thompson v. Thompson, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990)).

Turning to the case *sub judice*, we must first note that Wife has failed to comply with Rule 7 of the Rules of the Court of Appeals.[1] Rule 7 states:

> (a) In domestic relations appeals where the issues involve the amount or the disposition of the marital property, the appellant's brief shall contain in the statement of facts or in an appendix, an orderly tabulation of all marital property. . . .
> (b) If the appeal involves issues about the separate property of either party or the allocation of the marital debts, the appellant's brief shall contain a separate table in the same form showing the pertinent information for that disputed issue.
> . . .

This Court has held that where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements. See Bean v. Bean, 40 S.W.3d 52 (Tenn. Ct. App. 2000). Even without this information in her brief, however, we have still been able to glean from the record facts which show Wife's arguments to be without merit.

With regard to the overall distribution of marital property in this case, the trial court distributed $67,115.00 of marital assets to Wife. Husband, on the other hand, was given assets worth $327,282.00 encumbered by $561,000.00 of debt. The court also ordered Husband to pay an additional $123,284.00 of other unrelated and unsecured debts. Finally, the court held that Wife diverted marital property totaling $92,009.22 to herself soon after the divorce action was filed. Accordingly, by our calculation, Wife ultimately received $159,124.22 in marital assets whereas Husband ended up with negative $360,562.00 of equity, a difference of over one-half of a million dollars.

---

[1] Rule 7 was formerly Rule 15 of the Rules of the Court of Appeals. The language and intent of the current Rule 7 and former Rule 15, however, are identical.

Wife now argues that the trial court miscalculated the value of various items of marital property and erred in calculating the total funds granted to her. Based on the alleged erroneous values and calculations, Wife argues that the results obtained by the trial court are inequitable. From our review of the record, taking all of Wife's allegations as true, we still fail to find that the final results achieved by the trial court are inequitable or out of line with the statutory factors enumerated above. Accordingly, we find Wife's arguments with respect to this issue to be without merit.

Wife also argues that the court failed to hold her harmless on certain debt related to Husband's business. We find this argument to be without merit as well. The trial court's findings clearly indicated that Husband received the property encumbered by the debt as well as the debt itself. Further, the court, in its findings, specifically stated that Wife "is not obligated to pay any of the debts." Accordingly, we affirm the trial court's distribution of marital property and debt in all respects.

### B. Alimony In Futuro and Alimony Pendente Lite Arrearage.

Wife's second issue raised for our review concerns the trial court's refusal to grant Wife alimony in futuro and the forgiveness of Husband's arrearage of alimony pendente lite. The trial court, in its findings of fact stated that, "[a]lthough [Wife] is disabled, she is also drawing disability, and is not obligated to pay on any of the debts." Further, the court stated that, "[Husband's] income is approximately the same as [Wife's]." With regard to Husband's arrearage, the court stated that although he was ordered to pay temporary alimony, "the proof is uncontroverted that he has not been able to pay it." Based on these facts, the court refused to grant Wife alimony and forgave Husband's arrearage.

There are no hard and fast rules governing the availability of spousal support. Crain v. Crain, 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996). Section 36-5-101(d)(1) of the Tennessee Code, however, provides a framework from which courts can make a proper determination of whether support is needed. This section lists numerous factors that courts should consider. See TENN. CODE ANN. § 36-5-101(d)(1)(A) - (L). Also helpful to our review is our supreme court's opinion in Aaron v. Aaron, 909 S.W.2d 408 (Tenn. 1995). In Aaron, the supreme court stated that "[w]hile there is no absolute formula for determining the amount of alimony, 'the real need of the spouse seeking the support is the single most important factor.'" Id. at 410 (quoting Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). Next, "the courts most often consider the ability of the obligor spouse to provide support." Id.

We must also be cognizant of the fact that trial courts retain discretion in determining whether or not to award spousal support and that "appellate courts will not interfere except in the case of an abuse of discretion." Burlew v. Burlew, 40 S.W.3d 465, 470 (Tenn. 2001) (citations omitted). Further, in determining whether an abuse of discretion has occurred, we must not merely substitute our judgment for that of the trial court. White v. Vanderbilt Univ., 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) Instead, appellate review must seek to determine whether the lower court's decision has a basis in law or fact and is therefore not arbitrary, illogical, or unconscionable. State v. Brown & Williamson Tobacco Corp., 18 S .W.3d 186, 191 (Tenn.2000). Where a court has

improperly construed or applied the applicable legal principles, appellate courts may properly reverse the trial court's decision.   White, 21 S.W.3d at 223.

Here, Wife argues that the factors given in section 36-5-101(d)(1) work in her favor and that proper application of the factors show that the trial court abused its discretion.  First, Wife asserts that because of her disability, her need for support is obvious.  While we generally agree with this statement, we must also look at the other relevant factors including Husband's ability to pay her support.

With regard to Husband's ability to pay, the court found that Husband's income was approximately the same as Wife's.  Specifically, Husband offered sworn proof, which indicated that his average monthly income is $883.26 as compared to the $919.15 that Wife receives every month in Social Security disability benefits.  Wife now argues that Husband's testimony regarding his income was not credible and that the preponderance of the evidence shows that Husband actually enjoys a much greater income.  We disagree with Wife's conclusions.  Wife has offered no real proof regarding Husband's alleged greater income.  Instead, Wife offers merely speculative evidence consisting of Husband's intent and past actions.  This evidence does not rise to the level required for this Court to second guess the factual findings of the lower court.

We must also note the amount of marital property that was given to Wife and the fact that she was given none of the huge debts created by the parties.  Further, Wife was able to take approximately $92,000.00 of marital property soon after the divorce was filed, which indicates that her need for temporary alimony was greatly reduced.  Accordingly, we affirm the court's decision in refusing to award alimony in futuro and forgiving Husband's arrearage.

*C.  Attorney's Fees.*

Wife's next issue concerns the court's failure to award her attorney's fees.  This court has repeatedly held that an award for attorney's fees in a divorce case is treated as spousal support and should be characterized as alimony *in solido*.  Wild v. Wild, 66 S.W.2d 892, 894 (Tenn. Ct. App. 2001) (citing Sannella v. Sannella, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999); Smith v. Smith, 984 S.W.2d 606  (Tenn. Ct. App. 1997); Anderton v. Anderton, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1988); Gilliam v. Gilliam, 776 S.W.2d 81 (Tenn. Ct. App. 1988)).  Accordingly, when reviewing a court' decision to award attorney's fees, we must recognize the wide discretion given to the trial court.  Id.  Appellate courts may reverse a trial court's decision to award attorney's fees, however, "where the evidence preponderates against the award, and a manifest injustice will be done" by allowing the trial court's decision to stand.  Id.

With attorney's fees being a form of alimony, courts must balance the factors given in section 36-5-101(d)(1) of the Tennessee Code, as stated above, in determining a proper award.  Again, the cornerstones in balancing the factors are the real need of the requesting spouse and the ability of the obligor spouse to pay.  Aaron, 909 S.W.2d at 410.  Although the relative fault of the parties is to be considered, awards should not be punitive in nature.  Anderton, 988 S.W.2d at 682.  Instead, the true

purpose should be to "aid the disadvantaged spouse to become and remain self-sufficient and . . . to mitigate the harsh economic realities of divorce." Id.

Here, with regard to this issue, Wife merely relies on her previous arguments and asserts that Husband has the ability to pay and that she lacks sufficient funds to cover her costs. Again, however, for the same reasoning as above, we find that the preponderance of the evidence does not contradict the findings of the trial court and hold that the trial court did not abuse its discretion in refusing to award attorney's fees to Wife. Accordingly, we find Wife's arguments with respect to this issue to be without merit.

### III. Conclusion

Based on the foregoing conclusions, we hereby affirm the decision of the trial court in all respects. Costs on appeal are assessed against Appellant, Joyce Marie Howell, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE