IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 10, 2001 Session

## ALVIN BATES v. DR. JOSEPH METCALF, IV, d/b/a OAK RIDGE SURGEONS, P.C.

Appeal from the Circuit Court for Anderson County
No. 98LA0448 James B. Scott, Jr., Judge

FILED DECEMBER 3, 2001

No. E2001-00358-COA-R3-CV

In this appeal from the Circuit Court for Anderson County, the Plaintiff/Appellant, Alvin Bates, contends that the Trial Court erred in failing to grant him a directed verdict in his cause of action against the Defendant/Appellee, Dr. Joseph Metcalf, IV, for medical malpractice and medical battery. Mr. Bates further contends that the Trial Court committed other errors with respect to the admission and exclusion of evidence and that there was no material evidence to support the jury's verdict in favor of Dr. Metcalf. We affirm the judgment of the Trial Court and we adjudge costs of appeal against Mr. Bates and his surety.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed;
Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court. Herschel P. Franks, J., filed a concurring opinion. CHARLES D. SUSANO, JR., J., filed a dissenting opinion.

David Randolph Smith, Nashville, Tennessee, and James P. Smith, Crossville, Tennessee, for the appellant, Alvin Bates.

Debra A. Thompson, Knoxville, Tennessee, for the appellee, Dr. Joseph Metcalf, IV.

### OPINION

This appeal arises out of an action for medical battery and medical malpractice filed by the Plaintiff/Appellant, Alvin Bates, against the Defendant/Appellee, Dr. Joseph Metcalf, IV d/b/a Oak Ridge Surgeons, P.C.

In May of 1997 Mr. Bates consulted Dr. Metcalf, a medical doctor specializing in general surgery, because he was experiencing rectal pain and bleeding. Upon Dr. Metcalf's examination and subsequent diagnosis of "thrombosed internal hemorrhoids" Mr. Bates consented to a hemorrhoidectomy which Dr. Metcalf performed on May 15, 1997.

Mr. Bates returned to Dr. Metcalf's office for a post-operative check-up on May 28, 1997, at which time Dr. Metcalf advised him to continue a daily self- treatment regimen which included diet modification and application of Anusol, a medicated cream. The record shows that Mr. Bates continued this program of self-treatment for the next four and one-half months.

Mr. Bates did not see Dr. Metcalf again until September 24, 1997, at which time he was once again experiencing pain and bleeding as he had prior to the surgery of May 15. Dr. Metcalf's examination on this visit was limited because of Mr. Bates's extreme discomfort and, although Dr. Metcalf advised Mr. Bates that he believed his symptoms indicated a recurrence of hemorrhoids, he further advised him that the pain and bleeding could be caused by something other than hemorrhoids such as an anal fissure. Because his examination had been restricted as a consequence of Mr. Bates's discomfort, Dr. Metcalf recommended that Mr. Bates allow him to conduct an anal examination under anesthesia. In his notes from this visit Dr. Metcalf wrote, "Signs and symptoms of continued hemorrhoidal bleeding. The patient has done well for the past four months. I feel we need to do a formal anal evaluation, possible further hemorrhoidectomy."

The record shows that on the date of this visit Mr. Bates signed a consent form designated REQUEST FOR SURGERY which included the following statements:

2. The procedure(s) necessary to be performed has(have) been explained to me and I understand the nature of the procedure to be: Anal Exam and possible Hemorrhoidectomy

3. Procedure as scheduled: Anal Exam and possible Hemorrhoidectomy

4. It has been explained to me that, during the course of the operation, unforseen conditions may require additional surgery immediately. If I need such additional surgery during my operation, I permit Dr. Metcalf, his assistants, or his designees to perform such medical and surgical procedures as are necessary.

5. Dr. Metcalf has discussed and explained to me
    a. The nature and purpose of the operation or procedure.
    b. The possibility that complications may arise or develop.
    c. Significant risks.
    d. Available alternative methods of treatment.
    e. Prognosis if no treatment is received.
    f. Other _____

Dr. Metcalf testified that he also told Mr. Bates that "whatever I found under the anal examination, that if it could be fixed at that time, we would do that. And he knew that an anal fissure was a possibility. And, therefore, he knew that fixing an anal fissure was what he expected me to do." Mr. Bates testified that Dr. Metcalf told him " that he would do an exam, check and see, fix the hemorrhoids." Mr. Bates did not recall Dr. Metcalf telling him that if the cause of the

bleeding was something that he could simply fix, he would fix it and he denies that he gave Dr. Metcalf consent to fix the problem whatever it might be.

On the day following the office visit of September 24, 1997, Mr. Bates appeared at the emergency room of the Methodist Medical Center because of his rectal pain and bleeding and was again seen by Dr. Metcalf who ordered blood work and arranged for a colonscopy which was performed by another physician the next day.

An anal exam under general anesthesia was performed by Dr. Metcalf upon Mr. Bates on September 30,1997. Upon examining Mr. Bates's anal canal, Dr. Metcalf discovered that the cause of Mr. Bates's pain and bleeding was not hemorrhoids, but rather a large anal fissure. Dr. Metcalf's operative note reflects that he and his operative team "decided at this time that an internal lateral sphincterotomy would be part of this operation". It is not disputed that a sphincterotomy, which involves cutting the anal sphincter, is the appropriate surgical remedy for an anal fissure such as the one exhibited by Mr. Bates. Dr. Metcalf testified that he would have emphatically recommended that Mr. Bates have such surgery and that the fissure would probably not have healed without the surgery. Dr. Metcalf admits, however, that he never specifically discussed the lateral internal sphincterotomy with Mr. Bates prior to performing the operation. Mr. Bates asserts that he would not have consented to the lateral internal sphincterotomy had it been proposed to him.

After returning home from the hospital and while he was still healing from the surgery of September 30, Mr. Bates began to experience fecal incontinence. On December 19,1997, he met with Dr. Metcalf to discuss this problem and was referred by him to Dr. Julio Solla, a colon and rectal surgeon with the Universtiy of Tennessee Medical Center in Knoxville. Dr. Solla determined that Mr. Bates's incontinence was caused by an abnormality of the pudendal nerves which, when functioning properly, control the external sphincter muscle which, in turn, controls fecal continence. Dr. Solla offered Mr. Bates the option of a colostomy and referred him for a second opinion to Dr. Frank Opelka, another colon and rectal surgeon, affiliated with the Ochsner Clinic in New Orleans, Louisiana.

In May of 1999 Dr. Opelka examined Mr. Bates and presented him with the alternative remedies of a colostomy, construction of an artificial sphincter or an operation to repair his internal sphincter. Mr. Bates consented to the final option and on June 3, 1999, Dr. Opelka performed surgery to repair Mr. Bates's internal sphincter. Unfortunately, this surgery was not successful and Mr. Bates continues to suffer from incontinence.

The present lawsuit commenced on September 30, 1998, when Mr Bates filed a *pro se* complaint against Dr. Metcalf d/b/a Oak Ridge Surgeons, P.C.[1] seeking damages for injuries allegedly suffered as a result of the surgery performed by Dr. Metcalf on September 30,1997, and asserting that Dr. Metcalf was guilty of negligence and medical malpractice in performing such surgery.

---

[1] Mr. Bates dismissed his claim against the Oak Ridge Surgical Group, P.C. on July 10, 1999.

On May 24, 1999, Mr. Bates, who had by this time retained his present legal counsel, filed a motion to amend his complaint to aver that, in performing the lateral internal sphincterotomy without his consent, Dr. Metcalf had committed medical battery. Mr. Bates further moved to amend his complaint to aver that Dr. Metcalf had failed to obtain informed consent to perform the surgery in deviation from the recognized standard of professional practice in violation of T.C.A. 29-26-118. Mr. Bates motion to amend was subsequently approved by the Court at trial.

The jury trial of Mr. Bates's claims against Dr. Metcalf began on July 11, 2000. At the close of proof the Trial Court granted Dr. Metcalf a directed verdict with respect to malpractice in performance of the surgical procedure itself and denied Mr. Bates a directed verdict on the issue of medical battery. Thereafter, the jury found that Mr. Bates had expressly or impliedly authorized surgery that could include the lateral internal sphincterotomy performed by Dr. Metcalf and that a medical battery was, therefore, not committed in this case. The jury further found that Dr. Metcalf had obtained informed consent by disclosing to Mr.Bates the risks and alternatives for the lateral internal sphincterotomy. On August 1, 2000, the Trial Court entered its judgment in favor of Dr. Metcalf in accord with the jury's verdict

On July 26, 2000, Mr. Bates filed a motion for judgment notwithstanding the verdict or in the alternative new trial. That motion was denied by the Trial Court by order entered September 26, 2000. On October 20, 2000, Mr. Bates filed his notice of appeal.

Mr. Bates presents eight issues for our review in this case which we restate as follows:

1) Whether the Trial Court erred in failing to grant Mr. Bates a directed verdict on the issue of medical battery.

2) Whether there was material evidence to support the finding of the jury that Mr. Bates impliedly consented to the lateral internal sphincterotomy performed upon him.

3) Whether there was material evidence to support the finding of the jury that Dr. Metcalf obtained informed consent to perform a lateral internal sphincterotomy upon Mr. Bates.

4) Whether the Trial Court erred in allowing counsel for Dr. Metcalf to cross examine Mr. Bates with regard to the amendment of his complaint to include claims charging Dr. Metcalf with negligence because of his failure to obtain informed consent and charging him with battery for his failure to obtain consent.

5) Whether the Trial Court erred in allowing cross-examination and introduction of evidence with regard to Mr. Bates's consent to medical procedures other than the lateral internal sphincterotomy.

6) Whether the Trial Court erred in excluding the expert testimony of Dr. Frank Opelka because he is not licensed to practice medicine either in Tennessee or in a continuous bordering state.

7) Whether the Trial Court erred in allowing cross-examination of Dr. Clifford Black with regard to a medical malpractice case pending against him.

8) Whether the Trial Court erred in instructing the jury on the issue of medical battery.

In addition to the eight issues stated above, both Dr. Metcalf and Mr. Bates devote portions of their briefs to the issue of whether Mr. Bates's incontinence was actually caused by the surgery performed by Dr. Metcalf on September 30, 1997. However, the ruling of the Trial Court and the verdict of the jury with respect to the issues of medical battery and informed consent forestalled consideration of this issue of causation. As this issue was not determined at trial, it is not appropriate that we consider it in this appeal and we decline to do so. See T.R.A.P. 3(a).

The first issue presented by Mr. Bates calls upon us to determine the propriety of the Trial Court's denial of his motion for a directed verdict. The standard of review with respect to a trial court's ruling on a motion for directed verdict is well-settled. As we stated in the case of *Maddux v. Cargill, Inc.*, 777 S.W.2d 687 (Tenn. Ct. App. 1989) at page 691:

> The rule for determining a motion for directed verdict requires the trial judge and the appellate courts to look to all of the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences from it in his favor. The court must discard all countervailing evidence, and if there is then any dispute as to any material, determinative evidence or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied.

Before we can conclude that the Trial Court erred in denying Mr. Bates's motion for a directed verdict, we must find that the evidence submitted is susceptible to the sole conclusion that Mr. Bates did not consent to a lateral internal sphincterotomy and that reasonable minds could not differ as to that conclusion. See *Alexander v. Armentrout,* 24 S.W.3d 267 (Tenn. 2000).

Two questions must be asked in determining whether a medical battery has been committed: (1) was the patient aware that the doctor was going to perform the procedure in question and ,if so, (2) did the patient authorize performance of such procedure. A plaintiff's cause of action may be classified as a medical battery only when the answer to either of these questions is in the negative. See *Blanchard v. Kellum, D.D.S.*, 975 S.W.2d 522 (Tenn.1998).

In the case *sub judice* Dr. Metcalf testified that he never specifically advised Mr. Bates that he might perform a lateral internal sphincterotomy upon him prior to doing so and that he did not consider performing a lateral internal sphincterotomy until he conducted the anal exam on September 30, 1997. Also, the consent form signed by Mr. Bates with respect to the procedures to be performed on September 30, 1997, does not mention "lateral internal sphincterotomy" or any other procedures other than "anal exam and possible hemmorhoidectomy." Accordingly, there is no question that Dr. Metcalf failed to obtain specific consent to perform a lateral internal sphincterotomy. Nevertheless,

Dr. Metcalf contends that Mr. Bates did consent to the lateral internal sphincterotomy as a matter of implication.

Dr. Metcalf testified that, prior to September 30, 1997, he and Mr. Bates engaged in conversations on more than one occasion during which he proposed that Mr. Bates's pain and bleeding might be the result of an anal fissure. Dr. Metcalf also testified that he advised Mr. Bates that, once he determined the cause of Mr. Bates's symptoms, he would fix the problem whatever it might be. Although Mr. Bates agrees that the possibility of an anal fissure was raised by Dr. Metcalf in pre-operative conversations, he denies that Dr. Metcalf advised him that he would fix the problem whatever it might be. Mr. Bates further argues that the scope of the procedure which Dr. Metcalf was authorized to perform on September 30, 1997, was restricted to "an anal exam and possible hemmorhoidectomy" as stated in the signed consent form and that the parameters of consent should not be extended based upon alleged pre-operative conversations. In support of this argument Mr. Bates cites the case of *Church v. Perales,* 39 S.W.3d 149 (Tenn. Ct. App. 2000).

The plaintiff patient in *Church* asserted that the defendant doctor had committed medical battery by performing unauthorized surgery to remove her ovaries, uterine tubes, and related ligaments when she had stated that she "didn't want nothing done, as I say, except have my bladder fixed up." The only direct evidence that the plaintiff had, in fact, made this statement to the defendant was apparently the plaintiff's deposition testimony which, through her oversight, had not been made part of the appellate record. Referring to the omission of this testimony from the record, the Court stated that the plaintiff "cannot demonstrate the existence of a material factual dispute regarding her medical battery claim." The Court noted, however, that the medical battery claim would have failed even without the omission of the deposition testimony regarding the alleged pre-operative conversation because the plaintiff had executed a written consent form expressly consenting to the procedures performed.

Mr. Bates argues that the *Church* case and the case *sub judice*, in essence, involve the same situation in that both he and the plaintiff in *Church* signed a consent form with respect to which fact a reasonable person could reach but one conclusion. Mr. Bates contends that, just as the only reasonable conclusion was that the plaintiff in *Church* consented to the surgery performed because she executed a consent form specifically describing such surgery, the only reasonable conclusion in the present case is that, since Mr. Bates signed a consent form specifying "anal exam and possible hemorrhoidectomy", he did not consent to any other procedures. We disagree with this anaysis.

We find a critical distinction between *Church* and the case before us in that the plaintiff in *Church*, unlike Mr. Bates, was seeking to negate her signed statement of consent. This Court's finding in *Church* was specific and limited to the determination that " the existence of a signed consent form gives rise to a presumption of consent in the absence of proof of misrepresentation, inadequate disclosure, forgery or lack of capacity" Our holding in *Church* doesn't preclude the admission of parole evidence to show that the patient verbally consented to procedures *in addition* to those specified in the consent form.

Given Dr. Metcalf's attestation that he advised Mr. Bates before surgery that he would fix his problem whatever it was, it is our finding that one might reasonably conclude that Mr. Bates gave Dr. Metcalf implied consent to perform the lateral internal sphincterotomy. Accordingly, we agree with the Trial Court's ruling denying Mr. Bates's motion for a directed verdict on the issue of medical battery.

The second issue raised by Mr. Bates questions whether there was material evidence to support the jury's finding that he impliedly consented to the lateral internal sphincterotomy. Our standard of review with respect to the findings of a jury is clearly stated at T.R.A.P. 13(d) to the effect that "Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict". See also *Foster v. Bue*, 749 S.W.2d 736 (Tenn. 1988).

As stated, Dr. Metcalf testified at trial that he advised Mr. Bates that his problem might be an anal fissure and that he would fix the problem whatever it might be. Such testimony necessarily enters into consideration of the issue of whether Mr. Bates gave consent to the lateral internal sphincterotomy, is determinative of that issue and, therefore, constitutes material evidence. See *Camurati v. Sutton,* 342 S.W.2d 732 (Tenn. Ct. App. 1960). Consequently we conclude that the jury's finding that Mr. Bates consented to the lateral internal sphincterotomy is supported by material evidence.

The third issue presented for our review questions whether material evidence was presented in this case supporting the jury's verdict that Dr. Metcalf obtained informed consent to perform a lateral internal sphincterotomy on Mr. Bates.

Under T.C.A. 29-26-118 a plaintiff patient asserting a cause of action based upon lack of informed consent must prove by expert testimony that the defendant physician did not supply appropriate information to the patient in accordance with the recognized standard of acceptable practice.

Whether the information provided to the patient is appropriate is determined by the nature of the treatment, the extent of risk involved and the standard of care of the treating physician. See *Cardwell v. Bechtol*, 724 S.W.2d 739 (Tenn. 1987). As stated by the Court in *Shadrick v. Coker*, 963 S.W.2d 726 (Tenn. 1998) the advice required of the physician depends upon "the usual and customary advice given to patients in similar situations."

The specific question propounded to the jury with respect to informed consent in this case was as follows:

> Did Dr. Metcalf, in accordance with the recognized standard of professional practice in Oak Ridge or a similar community, disclose to Alvin Bates the risks and alternatives for the surgery performed on September 30, 1997?

Mr. Bates asserts that in answering 'yes' to this question the jury did so without the support of material evidence. We disagree.

Mr. Bates maintains that it is undisputed that Dr. Metcalf did not discuss the lateral internal sphincterotomy or its risks and alternatives prior to surgery. We agree that the record shows that Dr. Metcalf did not specifically relate the risks and alternatives of the surgery performed to a lateral internal sphincterotomy. However, his testimony at trial constitutes material evidence that Dr. Metcalf did discuss the risks and alternatives of a hemorrhoidectomy and that the risk of incontinence was included among the risks discussed. There was also material evidence that the risks and alternatives of a hemmoroidectomy are the same as those of a lateral internal sphincterotomy. Dr. Anthony Haley, an expert witness testifying on behalf of Dr. Metcalf, testified that the risks are the same for a hemorrhoidectomy and a lateral internal sphincterotomy and that if Mr. Bates was advised of the risks of hemorrhoidectomy he would have been advised of the same risks that are associated with a lateral internal sphincterotomy. In addition , Dr. Metcalf testified that a lateral internal sphincterotomy is the only surgical technique for repairing an anal fissure and that the non-surgical, or conservative treatment for hemorrhoids is the same as it is for an anal fissure and consists of the same self-treatment program that Mr. Bates had already employed for four months without success. Dr. Haley also attested that the conservative treatment received by Mr. Bates had been adequate as of September 30,1997. We conclude that it is sufficient for a finding of informed consent that Mr. Bates was informed of risks and alternatives which would have attended a lateral internal sphincterotomy even though those risks and alternatives were presented to him in anticipation that he would be undergoing a hemorrhoidectomy, not a sphincterotomy.

We also find in the following additional testimony of Dr. Haley material evidence that Dr. Metcalf's disclosure of the risks and alternatives of the lateral internal sphincterotomy were in accord with the requisite standard of practice:

> Q: Dr. Haley, earlier I asked you whether or not you had formed an opinion within a reasonable degree of medical certainty as to whether or not Dr. Metcalf had deviated from the standard of care of a general surgeon practicing in Oak Ridge, Tennessee, in his care and treatment of Mr. Bates. Do you remember my earlier question?

> A: Correct.

> Q: Please tell the judge and jury what your opinion is.

> A: I do not feel like he deviated from the standard of practice. I think he did exactly what any competent general surgeon would have done at the time he was there.

And elsewhere Dr. Haley testified:

Q: Dr. Haley, in your opinion, within a reasonable degree of medical certainty, do you think in this case that Dr. Metcalf obtained Mr. Bates' informed consent to perform a spincterotomy [sic]?

A: Yes, I do.

It is our determination that the jury's finding that Dr. Metcalf had informed consent to perform a lateral internal sphincterotomy is supported by material evidence and Mr. Bates's assertion to the contrary is without merit.

The fourth issue which we address questions whether the Trial Court erred in allowing cross-examination of Mr. Bates as to his original *pro se* complaint and its amendment. Mr. Bates argues that cross-examination should not have been allowed regarding the fact that the original complaint did not assert claims as to medical battery or informed consent and the fact that such claims were only raised after he retained his present attorney in the case. Mr. Bates contends that such cross-examination was irrelevant to any issue in the case, unfairly prejudiced the case against him and constituted an *ad hominem* attack upon his attorney. We are compelled to disagree with these contentions.

Material issues before the jury in the case consisted of whether Mr. Bates consented to the lateral internal sphincterotomy which was performed upon him by Dr. Metcalf and whether Dr. Metcalf provided him with adequate information to obtain informed consent. In addressing these issues it was incumbent upon the jury to consider the credibility of Mr. Bates's assertions that he had not consented to the lateral internal sphincterotomy and had not received adequate information regarding that operation. The original complaint filed by Mr. Bates on September 30, 1998, asserts that Dr. Metcalf committed medical malpractice by performing the sphincterotomy in a negligent manner, by failing to properly recognize the resulting injury and by failing to properly take all reasonable steps available to repair the damage. There is no assertion in the original complaint that Mr. Bates did not consent to the surgery performed or that he did not receive sufficient information about the surgery to give informed consent.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See T.R.E. Rule 401.

We agree with Mr. Bates's statement that the fact that he didn't know the law as to medical battery or informed consent proves nothing. However, he need not have had knowledge of the law to assert that he did not give Dr. Metcalf permission to perform the surgery he received. It is reasonable to conclude that, if Dr. Metcalf performed an operation on Mr. Bates without consent Mr. Bates would have included this assertion in his original complaint and, although not dispositive of the issue, the fact that he did not include it is relevant on the question of whether he did give such consent. Accordingly, we find that cross-examination of Mr. Bates regarding his original complaint was relevant to the issues in this case.

Under T.R.E. Rule 403 "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Although Mr. Bates contends that cross-examination regarding the original complaint was unfairly prejudicial, he offers no specific reason for this contention and we find nothing in the record which would lead us to that conclusion. Similarly, although Mr. Bates asserts that the cross-examination regarding his original complaint and arguments of Dr. Metcalf's attorney constituted an *ad hominem* attack upon his attorney he has not referred us to sufficient supporting evidence in the record to substantiate this assertion.

In view of the above we find that the Trial Court did not abuse its discretion by allowing the cross- examination of Mr. Bates with respect to his original *pro se* complaint. We further find that Mr. Bates's assertion that statements made by Dr. Metcalf's attorney constituted an *ad hominem* attack upon his own attorney are without merit.

The fifth issue presented for our review questions whether the Trial Court erred in allowing cross-examination regarding Mr. Bates's consent to other surgery and treatment. Mr. Bates contends that allowance of evidence with respect to other consent forms and other consent procedures constitutes inadmissible propensity proof and improper character evidence.

The law is well-settled that the failure of a litigant to make a timely, specific objection to the introduction of evidence as inadmissible at the time of trial precludes that litigant from challenging such evidence on appeal. See T.R.E. Rule 103(a)(1)and *Adams v. Manis*, 859 S.W.2d 323 (Tenn. Ct. App. 1993). Our review of the record shows that there was no objection at trial to the impropriety of cross-examining Mr. Bates regarding his consent to other surgery and medical procedures or to the introduction as evidence of other consent forms he had signed. Accordingly, we find that Mr. Bates has waived his right to raise this issue on appeal.

The sixth issue presented for our review questions whether the Trial Court erred when it excluded the causation testimony of Mr. Bates's expert witness, Dr. Frank Opelka. Mr. Bates argues that the Trial Court erred in its exclusion of Dr. Opelka's testimony on the basis that he is not licensed to practice medicine in Tennessee or in a contiguous bordering state. Mr. Bates argues that the testimony of Dr. Opelka should have been admitted to prove causation so that the jury could understand the actual risks of a lateral internal sphincterotomy by showing that what could happen did happen.

The standard of review with respect to the admission of expert testimony was stated in the recent case of *State v. Coley*, 32 S.W.3d 831, (Tenn. 2000) at page 833 as follows:

> Determinations of the admissibility of expert testimony are made within the sound discretion of the trial court. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). The standard of review on appeal is whether the trial court abused its discretion in excluding the expert testimony. The abuse of discretion standard contemplates that before reversal the record must show that a judge "applies an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an

-10-

injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999);  *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

As we stated above, the jury did not reach the issue of whether the lateral internal sphincterotomy was the cause of Mr. Bates's incontinence. It is, therefore, not appropriate that we address questions presented regarding the propriety of excluding testimony to the extent that such testimony was offered to prove this matter of causation.

We agree that expert testimony like that of Dr. Opelka is unnecessary to sustain a cause of action for medical battery because whether the patient was aware that the doctor was going to perform the procedure in question and whether the patient consented to such procedure are within the common knowledge of a lay witness.  See *Blanchard v. Kellum*, 975 S.W.2d 522 (Tenn. 1998). However, Mr. Bates urges that Dr. Opelka 's testimony should have been admitted so that the jury could understand the risk involved in the surgery performed.  Evidence regarding degree of risk is not relevant to the issue of medical battery but rather to the standard of care with respect to the issue of informed consent which requires a determination of the risks that the medical procedure entails and whether the patient was advised of those risks.  T.C.A. 29-26-115(b) mandates that an expert witness testifying as to the standard of care in a medical malpractice action be licensed to practice medicine in Tennessee or in a contiguous bordering state.  There is nothing in the record to show that Dr. Opelka was licensed in either Tennessee or in a state bordering Tennessee and the exclusion of his testimony was, therefore, appropriate. Mr. Bates's assertion that the Trail Court should have waived  the contiguous state requirement is without merit.  A trial judge has wide discretion in the matter of the qualification of an expert witness.  See *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W. 2d 439 (Tenn. 1992).  We find nothing in the record to indicate that the Trial Court abused its discretion by refusing Mr. Bates's request for a waiver of the rule.

The seventh issue presented for our review questions whether the Trial Court erred when it allowed cross-examination of Mr. Bates's expert witness, Dr. Clifford Black, with respect to a medical malpractice lawsuit pending against him and with respect to whether he had ever violated the standard of care in his treatment of a patient.

Mr. Bates argues on appeal that cross-examination of Dr. Black regarding the medical malpractice case pending against him "injected a completely collateral, confusing and prejudicial element into the case in violation of Rules 401, 403 and 608(b) and prompted a mini-trial."  Mr. Bates further contends that the trial judge was required to conduct a jury-out hearing under Rule 608(b) and "impermissibly allowed such hearsay."   Mr. Bates also contends that the cross-examination of Dr. Black should have been disallowed based upon the doctrine of equitable estoppel and/or judicial estoppel.

The trial record shows that counsel for Mr. Bates objected to cross-examination regarding the malpractice action pending  against Dr. Black as follows:

Q: Now, Dr. Black, you are currently involved in a lawsuit in which you are a defendant?

A: That's correct.

MR. DAVID SMITH: Your Honor, I object to this as collateral and don't see that it has any place -- I mean, I just -- I think it's unduly time-consuming and irrelevant, the fact that he has been sued. I don't think there has been any result in the lawsuit and, you know, I don't think -- I think it is just prejudicial.

Nowhere in the objection at trial is it asserted that allowance of cross-examination of Dr. Black regarding the malpractice case would result in confusion, would prompt a mini-trial or would result in admission of hearsay evidence. As previously stated, this Court will not consider grounds for objection raised for the first time on appeal. See T.R.E. Rule 103(a)(1) and *Adams v. Manis,*859 S.W.2d 323 (Tenn. Ct. App. 1993).

Similarly, the trial record shows the following objection to the cross-examination of Dr. Black as to whether he had ever violated the standard of care with respect to a patient:

Your Honor, I object. That's -- it's not inconsistent and it's hearsay.

Counsel did not raise prejudice as a ground for this objection at trial and, therefore, we will not consider such as a ground for objection in this appeal.

The cross-examination complained of by Mr. Bates with respect to the pending medical malpractice action against Dr. Black elicited testimony from Dr. Black regarding his own treatment of a patient who had presented various symptoms consisting of fever, night sweats, weight loss and migratory thrombophlebitis, a condition involving blood clots in various areas of the body. Dr. Black testified that he suggested to his patient that he would like to perform a diagnostic procedure which would allow him to determine the cause of these symptoms. In the course of performing this procedure, Dr. Black detected an abnormality which prompted him to make an incision to open the patient's abdomen and remove what was subsequently identified to be a malformed, ectopic kidney. Questions directed to Dr. Black on cross-examination inquired whether he had consent to remove the kidney even though the patient had not specifically authorized him to do so. Dr. Black had previously testified under direct examination that Dr. Metcalf had violated the standard of care because he did not have consent to perform a lateral internal sphincterotomy. Dr. Black attested that his opinion in this regard was based, in part, upon the fact that Dr. Metcalf had not discussed performing the lateral internal sphincterotomy with Mr. Bates and also upon the fact that the consent form did not specify that Dr. Metcalf would be performing a lateral internal sphincterotomy. It is our finding that cross-examination of Dr. Black regarding the collateral matter of the medical malpractice lawsuit pending against him was properly allowed for the purpose of impeachment by contradiction. See *State v. Mooney,* an unpublished opinion of the Tennessee Court of Criminal Appeals filed in Knoxville on April 18, 1996. Dr. Metcalf was entitled to cross-examine Dr. Black to show that it was inconsistent and contradictory for him to maintain that Dr. Metcalf had violated

-12-

the standard of care by performing surgery that was not specifically authorized while he, Dr. Black had not violated the standard of care for ostensibly doing the same thing.

Mr. Bates's assertion that the Trial Court violated T.R.E. Rule 608 is inapposite. Rule 608 is not applicable to Dr. Blacks's testimony regarding the medical malpractice lawsuit because Rule 608 relates only to evidence referring to character for truthfulness or untruthfulness. Dr. Black's testimony does not relate to Dr. Black's character for truthfulness or untruthfulness but rather to the consistency of his definition of the standard of care.

Mr. Bates's contention that allowance of the cross-examination of Dr. Black with respect to the medical malpractice case pending against him violated T.R.E. Rules 401 and 403 is without merit. There is no question that the cross-examination testimony of Dr. Black was relevant under Rule 401 because it aided the jury in assessing the credibility of his prior direct testimony regarding consent and the standard of care to which a doctor in this community must conform. As to the assertion that allowance of Dr. Black's testimony constituted prejudicial error, we note that under Tennessee law a party seeking to exclude evidence on the ground of prejudice bears a significant burden of proof that the danger of unfair prejudice substantially outweighs the probative value of such evidence. See *White v. Vanderbilt University*, 21 S.W.3d 215 (Tenn. Ct. App. 1999) Mr. Bates presents no argument as to how the probative value of Dr. Black's testimony is substantially outweighed by the danger of prejudice.

Mr. Bates's argument that the Trial Court should have disallowed cross-examination of Dr. Black pursuant to the doctrine of equitable estoppel and/or judicial estoppel is based upon a pleading filed in *Dawna Rae Braton and Ryan Charles Bratton v. Afam Ikejiani, M.D.,* an unrelated case before the Eighth Circuit Court for Davidson County. Mr. Bates's attorney attests that State Volunteer Mutual Insurance Company, the liability insuror insuring the defendant doctor in the *Bratton* case, also insures Dr. Metcalf in the case *sub judice.* Mr. Bates submits a copy of a motion *in limine* filed by the defendant in *Bratton* which moves to prohibit cross-examination of expert witnesses for the defense about previous medical malpractice cases against those witnesses. Mr. Bates's attorney attests by affidavit that this motion was agreed to by the parties in *Bratton*. Mr. Bates argues that State Volunteer Mutual Insurance Company is the potential real party in interest in both *Bratton* and the case before us and contends that the positions taken in the two cases are inconsistent with respect to the same issue of cross-examination . Mr. Bates argues that equitable and/or judicial estoppel is "designed to protect the courts from entertaining inconsistent positions of parties in the courts" and, on that basis, the cross-examination of Dr. Black should have been disallowed. We disagree.

We find that Mr. Bates's argument is without merit, if for no other reason than that the motion *in limine* in *Bratton* was not filed until April 2, 2001, whereas Dr. Black was cross-examined regarding the malpractice case against him on July 12, 2000. At the time of Dr. Black's cross-examination the *Bratton* motion *in limine* was not of record and, therefore, could not have supported an objection to allowance of Dr. Black's cross-examination.

The final question we must address in this appeal is whether the Trial Court erred in its instructions to the jury on the issue of medical battery. Mr. Bates asserts that the Trial Court instructed the jury that in order to find a medical battery it must decide whether, under the same or similar circumstances, a reasonable person would have consented to a lateral internal sphincterotomy. Mr. Bates correctly maintains that, while an objective standard is appropriate in determining whether there was informed consent, it is not appropriate in determining whether there was a medical battery. The controlling factual issues in a claim for medical battery are whether the patient knew the surgery was going to be performed and whether the patient authorized the physician to perform such surgery. In a claim for medical battery the focus is not on what a reasonable man would have done but on the patient's knowledge and awareness. See *Church v. Perales*, 39 S.W.3d 149 (Tenn. Ct. App. 2000).

In support of his argument that the Trial Court erred in its instructions to the jury Mr. Bates quotes two segments of the trial record. The first of these is set forth by Mr. Bates as follows:

> If a medical battery is committed, then Dr. Metcalf is responsible for the damages proven to have been suffered. These damages and issues must be proven by a preponderance of the evidence. If the jury should find from the proof that the Defendant performed a lateral internal sphincterotomy without the consent of the plaintiff, then in that event Defendant is responsible for any injury caused by the treatment of the Plaintiff. You must decide, based upon the evidence provided, whether a reasonable person in the patient's position would have consented to the treatment in question if adequately conformed of all significant perils, that is, whether a reasonable person like Mr. Bates or in Mr. Bates position, would have consented to the lateral internal sphincterotomy had the risks of information been discussed with him. A medical battery occurs when a physician performs an authorized[2] procedure.

The second segment of the trial record pertaining to the Trial Court's instructions to the jury is set forth by Mr. Bates as follows:

> Issues of implied consent. Members of the jury, the standard to be applied in the consent malpractice case is an objective standard. An objective standard is based upon the facts presented to you, the jury and known to the Plaintiff, Mr. Bates, at the time that the consent form was signed. You may consider all of the facts, including the Plaintiff's education, state of health, both mental and physical, age, and experience at the time of signing the consent form. A Plaintiff's hindsight is not the test. Mr. Bates is held to a standard of a reasonable prudent person and what that person would have done under the same or similar circumstances as

---

[2] The Trial Court record reveals that this word should be 'unauthorized' not 'authorized' In addition, comparison of the transcript portions, as set forth by Mr. Bates, with the actual Trial Court record quoted hereinafter, reveals various typographical errors and word omissions.

-14-

developed at this trial.  The plaintiff's testimony at trial is not controlling.  You may consider the consent form, the language used in the form, conversation, and all other facts presented to the plaintiff at the time of signing the consent form"

Our review of the trial record reveals that Mr. Bates has reformatted the foregoing segments, by eliminating the paragraph indentations as they appear in the trial transcript.  The first of the above quoted segments is actually set forth in the trial transcript as follows:

If a medical battery is committed, then Dr. Metcalf is responsible for the damages proven to have been suffered.  These damages issues must be proven by a preponderance of the evidence.

If the jury should find from the proof that the defendant performed the lateral internal anal sphincterotomy without the consent of the plaintiff, then in that event the defendant is responsible for any injury caused by the treatment of the plaintiff.

You must decide, based upon the evidence provided, whether a reasonable person in a patient's position would have consented to the treatment in question if adequately informed of all significant perils, that is, whether a reasonable person like Mr. Bates or in Mr. Bates' position would have consented to have the lateral sphincterotomy had the risks of information been discussed with him.

A medical battery occurs when a physician performs an unauthorized procedure.  A medical battery may occur when a physician performs a procedure that the patient was unaware that the doctor was going to perform.

The second segment from the Trial Court's instructions to the jury referenced by Mr. Bates actually appeared in the trial transcript as follows:

Issues of implied consent.
Members of the jury, the standard to be applied in the consent malpractice case is an objective standard.  An objective standard is based upon the facts presented to you the jury and known to the plaintiff, Mr. Bates, at the time that consent form was signed.

You may consider all of the facts, including the plaintiff's education, state of health, both mental and physical, age, and experience at the time of signing consent form.
A plaintiff's hindsight is not the test.  Mr. Bates is held to a standard of a reasonable prudent person and what that person would have done under the same or similar circumstances as developed at this trial.

The plaintiff's testimony at trial may be considered but the testimony is not controlling. You the jury may consider the consent form, the language used in the form, conversation, and all other facts presented to the plaintiff at the time of signing the consent form.

Mr. Bates maintains that it was appropriate to omit the paragraph format in setting forth these segments of the trial transcript because "the jury was read the charge and the clear flow of the language unmistakably applied an objective standard to the medical battery issue." We disagree and find that such reformatting introduces an element of confusion into the Trial Court's instructions that is not justified by the record. Mr. Bates has presented no proof that the trial transcript is not a true account of the trial proceedings and the paragraph format is part of that account. We assume that the division of the Trial Court's instructions into paragraphs was prompted by the pauses and inflections which ordinarily evince the presence of paragraphs in oral communication. Each of the paragraphs quoted expresses a separate thought and we find that the expression of several paragraphs as one paragraph implies an apparent confusion in the instructions which is not supported by the record.

We recognize that, although the second of the above quoted segments begins with the topic statement 'Issues of implied consent', the first paragraph thereafter describes an objective standard which is properly applied in determining whether there was *informed* consent and not *implied* consent. However, elsewhere in its instructions the Trial Court clearly instructs the jury that the reasonable person/objective standard is the applicable standard with regard to the issue of *informed* consent:

In an informed consent case, the issues to be determined are, one, what is the appropriate information which should be supplied to a patient concerning whether to consent to the procedure and, two, was the information supplied to the patient and, three, if the information had been supplied, would a reasonable person in plaintiff's position have made a different treatment decision?

We find that the Trial Court adequately clarified the ambiguity of its instructions as to the applicable standard for determining whether there was informed consent in this case and we further find that any error in the instructions in that regard was, thereby, rendered harmless.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause is remanded for collection of costs below. Costs of appeal are adjudged against Mr. Bates and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE